## UNITED STATES v. ONE HUNDRED BARRELS OF VINEGAR.

(District Court, D. Minnesota. Fourth Division. July 14, 1911.)

1. FOOD (§ 24*)—ADULTERATION—MISBRANDING—TEST.
   In a libel for forfeiture of alleged adulterated vinegar, the government is not limited to the standards mentioned in Agricultural Department bulletin No. 65 and circular 19, nor to methods of analysis adopted under regulation No. 4, but may make use of any accurate test.
   [Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*
   What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

2. FOOD (§ 24*)—ADULTERATION—VINEGAR—GLYCERIN TEST—ACCURACY—EVIDENCE.
   Evidence held to establish the accuracy of the glycerin test for the determination of pure cider vinegar.
   [Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

**3. FOOD (§ 10*)—CIDER VINEGAR—ADULTERATION.**

Where samples of alleged pure cider vinegar showed only from .11 to .16 glycerin, it was adulterated.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 11; Dec. Dig. 10.*]

**4. FOOD (§ 24*)—FORFEITURE—PROCEEDINGS BEFORE SECRETARY OF AGRICULTURE.**

Investigation provided for by food and drugs act (Act June 30, 1906, c. 3915, § 4, 34 Stat. 769 [U. S. Comp. St. Supp. 1909, p. 1189]). refers to cases in which there is to be a prosecution under section 5 for the enforcement of penalties prescribed by section 2, and not to cases where forfeiture proceedings are contemplated for condemnation, as authorized by section 10, so that it was no objection to forfeiture proceedings that no prior proceedings had been instituted before the secretary, under section 4.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

**5. FOOD (§ 24*)—ADULTERATION—FORFEITURE—SEIZURE.**

It is not ground for dismissal of a libel to forfeit adulterated food under food and drugs act (Act June 30, 1906, c. 3915, § 10, 34 Stat. 771 [U. S. Comp. St. Supp. 1909, p. 1191]), that the property was not seized before the libel was filed.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

**6. FOOD (§ 24*)—ADULTERATION—FORFEITURE—SHIPPED FOR SALE.**

Where adulterated vinegar was proceeded against under the food and drugs act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]), and it appeared that it had been the subject of interstate commerce and was seized while stored in the original unbroken packages, it was not material that the evidence showed that it had been shipped in interstate commerce for consumption, and not for sale in such unbroken packages.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

Libel by the United States against One Hundred Barrels of Vinegar. Judgment of forfeiture.

C. C. Houpt, U. S. Dist. Atty.

Thomas E. Lannen and Frank C. Brooks, for claimant.

WILLARD, District Judge. Bulletin No. 65 of the Department of Agriculture, Bureau of Chemistry, entitled "Provisional Methods for the Analysis of Foods, adopted by the Association of Official Agricultural Chemists, November 14–16, 1901," contains a statement by William Frear relating to the determination of the source of a vinegar, and gives some tests by which the genuineness of cider vinegar can be known. Circular No. 19 of the Department of Agriculture, issued on June 26, 1906, establishes a standard for vinegar. The evidence of the claimant in the case as well as that of the government establishes the fact that a compound one half of which is pure cider vinegar, and the other half something else, will answer the tests mentioned in bulletin No. 65 and meet the requirements of circular No. 19. Such an adulterated article which would not be pure cider vinegar would nevertheless have to be pronounced such if these tests and standards are the only ones to be applied. The tests and standards contained in other literature upon the subject published prior to 1906 are substantially those stated in the bulletin and in the circular. The testimony of the claimant's experts is based on such tests and standards.

It being proved that these are worthless, it follows that the opinions of such experts based on such standards to the effect that this article is pure cider vinegar are entitled to no great weight.

[1] Is there any evidence in the case which shows some other test by reference to which the genuineness of this vinegar can be determined? The government is not limited to the standards mentioned in the bulletin and circular above referred to. In the trial of litigated cases the government is not even limited to methods of analysis which may be adopted under regulation No. 4. The question in this case being whether or not the article is pure cider vinegar, the government can make use of any test which is an accurate one for deciding that question. Whether it is an accurate one or not must be decided by the court from all the evidence in the case. The testimony shows that practically all commercial vinegar is now made by the generator process. This process, however, is of recent origin, so recent that there is no literature on the subject. Most of the literature relating to cider vinegar has reference to other forms of production.

[2] Does the evidence disclose any accurate test for the determination of pure cider vinegar made by the generator process? It is claimed by the government that the testimony of the witnesses Bender and Goodnow, supplemented by that of Doolittle, does show such a test. Without discussing this evidence in detail it may be said that Bender, while in the employ of the government, operated commercial cider vinegar factories for several months in New Jersey, Massachusetts, and New York. He was there for the purpose of determining the constituents of cider vinegar. He made analyses every day of the cider stock before it entered the generator, and of the vinegar which came from the generator. Goodnow as an employé of the government was at generator factories in Michigan, New York, and New Jersey. His purpose was the same as that of Bender, and he made daily analyses extending over months, as Bender did. The result of these experiments was, so far as glycerin is concerned, as follows: The maximum quantity of glycerin found by Goodnow in any sample in Michigan was .46, the minimum .24; in New York .31 and .25. Bender's results in New Jersey were maximum .45 and minimum .32. These experiments, extended through several months in hundreds of samples, show no sample with less than .24 or more than .46 of glycerin.

Glycerin is not mentioned in any way, either in the bulletin or in the circular above referred to. The government, with these experiments as a basis, claims that it has discovered a new test, the accuracy of which has been established by the evidence. This contention is sustained. That glycerin exists in cider stock is not denied by the claimant, though one of its experts claims that it was practically destroyed in the generator process. That claim is not in any way substantiated by the evidence nor by the literature relating to wine vinegar. The evidence in fact shows that but little glycerin is lost by passing the cider through the generator and converting it into vinegar.

The claimant's objections to this test are various. It says that no such test had ever been heard of before, and that there is nothing in

the literature upon the subject of cider vinegar which in any way refers to such a test. If such an objection were to prevail it would prevent the application of any new test, no matter how thoroughly its accuracy might be established. Objections to the knowledge which Bender and Goodnow had as to the character of the stock, to the manner in which they made their experiments, and the seasons of the year when they were made, have all been considered, but they are not deemed sufficient to destroy the value of such experiments.

[3] The evidence having established the glycerin test as an accurate one for the determination of the purity of cider vinegar, it is now to be applied to the vinegar here in question. Samples B, C, and D, were taken on February 1, 1911. The smallest amount of glycerin found in any of Bender's or Goodnow's experiments being .24, these samples show respectively .13, .11, and .13. Samples E and F, known as the composite samples, were taken May 15, 1911. They are a mixture of equal quantities taken from six barrels. These samples show respectively .14 and .16 of glycerin.

The claimant objected to the method pursued in determining the amount of glycerin, and its experts characterized that method as entirely inaccurate. Such evidence does not substantially weaken that of the government chemists who testified to its accuracy. Moreover, the fact remains that using the same method in all these experiments, they always found a substance which they call glycerin. Applying precisely the same method to claimant's product, they found precisely the same substance, but in only one-half of the minimum quantity.

Claimant points out that the analyses of Bender and Goodnow were made as the vinegar came from the generator, while the samples in this case were analyzed some of them six weeks after the vinegar was received in barrels in Saint Paul, some ten weeks afterwards and some six months afterwards; but the evidence does not show that these lapses of time would materially affect the character of the vinegar stored in closed barrels. The claim that the character of that vinegar was materially changed during that time by the formation of mother in it is not borne out by the evidence. No serious objection can be made to the manner in which the samples were taken. Even if the barrel had contained solid matter at the bottom of it, and if it had been shaken so as to mix this solid matter with the whole mass, the sample then drawn off would have been filtered before analysis, in order to get rid of that matter. The experts of the government basing their opinion upon the application of the glycerin test, and upon other facts which appear in the analyses, particularly the high ratio between the ash and the nonsugar solids, testify that the claimant's product is not pure cider vinegar, but is a compound of about one-half cider vinegar and the other half distilled vinegar or diluted acetic acid, with the addition of other substances, the identity of which they could not determine. The opinion of the claimant's experts being based, as has been said, upon inadequate standards cannot outweigh the testimony of the government.

It may be worthy of remark that the evidence shows that the claimant has a cider vinegar factory in Michigan, and a distilled vinegar

factory in Chicago; it also may be noted that the claimant presented no evidence to show whether it bought this vinegar, or manufactured it, and if it manufactured it, out of what substances it was made.

[4] The motion of the claimant at the close of the evidence to dismiss the libel, because no proceedings were instituted by the Secretary of Agriculture prior to the filing of the libel, such as are provided for in section 4 of the food and drugs act is denied. The investigation provided for in section 4 seems to refer to cases in which there is to be a prosecution under section 5 for the enforcement of penalties referred to in section 2. It has no reference to proceedings for condemnation under section 10.

The amendment to regulation No. 5, issued February 6, 1911, evidently is based upon this construction of the law, for that provides that notice shall be given in every case to the party or parties against whom prosecution lies under this act. Moreover, the necessities of the proceedings under section 10 could not abide the delay caused by an investigation such as is prescribed by section 4. While that investigation is being carried on the property might disappear, or the packages be broken and become part of the general property of the state.

[5] The motion of the claimant made at the close of the testimony to dismiss the libel, because the property was not seized before the libel was filed, is denied. United States v. Two Barrels of Desiccated Eggs (D. C.) 185 Fed. 302; United States v. George Spraul & Co. (C. C. A.) 185 Fed. 405.

[6] The motion of the claimant made at the close of the testimony to dismiss the libel, on the ground that it does not appear that the vinegar seized here was shipped in interstate commerce for sale in the original unbroken packages, is denied. Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. ——.

The motions made by the claimant at the close of the testimony for a general finding in its favor and for special findings in its favor, are denied.

I make a general finding in this case in favor of the government, and find that the vinegar seized under this libel, to wit, 70 barrels, was both adulterated and misbranded.

Let judgment of condemnation and for the costs be entered against the 70 barrels of vinegar seized in this proceeding, as prayed for in the libel.