**KNAPP et al. v. CALLAWAY, Chief of New New York Station of Department of Agriculture, et al.**

District Court, S. D. New York.
Aug. 5, 1931.

Blackwell Bros., of New York City (James Madison Blackwell, and E. B. Bellinger, both of New York City, of counsel), for plaintiffs.

George Z. Medalie, U. S. Atty., of New York City (Maurice De Koven, Asst. U. S. Atty., of New York City, and James B. Horigan, Asst. Sol., Department of Agriculture, of Washington, D. C., of counsel), for defendants.

BONDY, District Judge.

This is a suit to enjoin officers of the Department of Agriculture from detaining certain shipments of dried egg yolk belonging to the plaintiffs and from basing the standard of dried egg yolk, for purposes of admissibility into the United States, upon the department's fatty acid test.

Section 2 of the Food and Drugs Act (21 USCA § 2) prohibits the importation of any article of food which is adulterated, and section 7 (21 USCA § 8) provides that an article shall be deemed to be adulterated in the case of food if it consists in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance.

Section **3** (21 USCA § 3) provides that the Secretary of the Treasury, the Secretary of Agriculture, and the Secretary of Commerce shall make uniform rules and regulations for carrying out these provisions.

Pursuant to this authority a rule was adopted (Regulation 4b of the Regulations for the Enforcement of the Federal Food and Drugs Act) providing that all foods shall be analyzed by the methods prescribed by the Association of Official Agricultural Chemists, when applicable, provided, however, that any method of analysis or examination satisfactory to the Food and Drug Administration may be employed.

It is contended by the plaintiffs that the new test which was recently put into effect in place of the organoleptic tests—appearance, taste, texture, solubility, viscosity and odor—theretofore used by the Department of Agriculture and still used by the trade to determine the merchantable quality and fitness of dried egg yolk for human consumption, is unfair and enforces an unauthorized standard which is arbitrary and capricious, citing Waite v. Macy, 246 U. S. 606, 38 S. Ct. 395, 62 L. Ed. 892; Lynch v. Tilden Produce Co., 265 U. S. 315, 44 S. Ct. 488, 68 L. Ed. 1034; Ambruster v. Mellon, 59 App. D. C. 341, 41 F.(2d) 430.

The plaintiffs urge that the decomposition detected by the Department's test is chemical decomposition of the fat into its component parts and not the bacterial decomposition resulting in staleness or rottenness intended by the statute, citing A. O. Andersen & Co. v. United States (C. C. A.) 284 F. 542.

The plaintiffs concede that the test is a fair and scientific test to determine the percentage of fatty acid contained in dried egg yolk.

They assert that whether or not such yolk consists in whole or in part of a filthy, decomposed, or putrid animal substance, can be adequately determined, as it always has been, by the organoleptic test, and that the test of lipolytic decomposition adopted by the government does not show whether such egg yolk consists of decomposed animal substance, and that decomposed dried egg yolk often *shows a lower percentage of fatty acid* than the standard fixed by the department.

■ The test required by the statute is not whether the food is unwholesome or injurious to health. See United States v. Two Hundred Cases of Adulterated Tomato Catsup (D. C.) 211 F. 780, 783; A. O. Andersen & Co. v. United States (C. C. A.) 284 F. 542.

■ That such a test has never been used or heard of before is immaterial. See United States v. One Hundred Barrels of Vinegar (D. C.) 188 F. 471, 473, 474. The fact that the trade does not use it is immaterial. See W. B. Wood Mfg. Co. v. United States (C. C. A.) 292 F. 133, 134.

It appears by the government's affidavits that the fat or ether extract of fresh eggs passes practically unchanged from the liquid egg into the dried egg; that the acidity of a strictly fresh liquid egg has never been found to be higher than 1.72 c.c. N/20 sodium ethylate per gram and never higher than 1.99 c.c. for any egg of edible commercial quality; that in no case were good shell eggs or frozen eggs ever found the acidity of the ether extract of which exceeded 2.5 c.c. per gram; that the acidity of this ether extract is always low when fresh sound eggs are used and high when decomposed or unsound eggs are used, and that the acidity of dried egg yolk prepared from sound fresh eggs was found to increase so slowly under ordinary conditions of storage that at the end of three years it does not equal 5 c.c., whereas egg products from decomposed eggs exhibit high acidity and a marked tendency for this acidity to increase rapidly; that, accordingly, sound eggs properly stored and shipped would show on arrival in the United States from China an acidity of from 2 to 3 c.c.; and that the acidity of the ether extract of dried egg yolk made from decomposed eggs often exceeds 5 c.c. at the time of drying, and, if not, it increases rapidly and soon exceeds that figure.

From these scientific facts the Department concludes that when dried egg yolk shows an acidity of 5 c.c. or more on arrival in the United States that indicates that it was made from eggs which would have shown, if tested in the liquid state, the characteristics of such decomposition as amounts to staleness or rottenness clearly within the meaning of the word decomposition as used in the statute, but which cannot be detected by the organoleptic test after drying because the volatile products of decomposition are driven off by drying, or else that such a percentage of acidity shows that the egg yolk was improperly dried or stored and thus became decomposed after drying.

■■ The acid test seems to be a good test of whether the fatty part of the egg has been attacked by decomposition. Eggs may have

a bad odor and show a low acidity, for it is conceded that the test does not detect protein decomposition, but eggs with a bad odor would be excluded as putrid. Thus, eggs may be filthy, decomposed, and putrid, and they may not have a high acidity, but, if they have a high acidity, that shows that the fatty part of the egg has been affected by decomposition. Many tests may be required to show that an egg is good in all respects, but any one of a number may suffice to show that it is bad in a certain respect. Though the affidavits of chemists, dealers, and dieticians used in support of the motion deny that the government's acid test shows that dried egg yolk is decomposed, or that decomposed liquid eggs were used in making it, it cannot be said, in view of the statements set forth in defendants' affidavits, that the test adopted by the government is arbitrary or capricious (see United States v. Bartram Bros. [C. C. A.] 131 F. 833; Commercial Solvents Corp. v. Mellon, 51 App. D. C. 146, 277 F. 548), or that the complainant shows reasonable probability of ultimate success. Where the facts are disputed, a preliminary injunction will not issue. Cumberland T. & T. Co. v. Stevens (D. C.) 274 F. 745; Wisconsin-Minnesota L. & P. Co. v. Railroad Commission of Wisconsin (D. C.) 267 F. 711.

The motion for a preliminary injunction is denied. However, in view of the sharp conflict in the opinion of experts and the desirability of an early determination of the issue, the action will be given a preference, if desired.